IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACY DARNELL HILL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:18-00326-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security,***[1] | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tracy Darnell Hill brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon consideration of the parties' briefs (Docs. 11, 14) and those portions of the

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d). (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Sept. 10, 2019)). The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).[3]

## I.    *Background*

Hill filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on December 12, 2014. After his applications were initially denied, Hill requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on December 13, 2016. On July 13, 2017, the ALJ issued an unfavorable decision on Hill's applications, finding him not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 13 – 24).

The Commissioner's decision on Hill's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on May 21, 2018. (R. 1 – 6). Hill subsequently brought this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19). With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s

factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4] "In determining whether substantial evidence exists, [a

---

[4] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record.  In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence.  It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact.  No similar presumption of validity attaches to the

---

under 42 U.S.C. §§ 405(g), 1383(c)(3));  *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

[Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208,

1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.  *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Hill met the applicable insured status

requirements through December 31, 2019, and that he had not engaged in substantial gainful activity since the alleged disability onset date of November 15, 2014. (R. 18).[7] At Step Two, the ALJ determined that Hill had the following severe impairments: status post cerebrovascular accident with right hemiparesthesia, headaches, and visual disturbance. (R. 18 – 19). At Step Three, the ALJ found that Hill did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in the Listing of Impairments. (R. 19).

At Step Four,[8] the ALJ determined that Hill had the residual functional

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant

capacity (RFC) "to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,]"[9] with the following limitations: Hill "could frequently handle, finger, and feel with the right dominant hand[;] could occasionally push and pull arm controls and leg controls on the right side[;] could occasionally operate foot pedals on the right and frequently stoop, kneel, crouch, crawl, balance, and climb ramps or stairs[;] cannot climb ladders, ropes or scaffolds[;] cannot work at unprotected heights[;] could tolerate occasional exposure to dangerous moving machinery and vibrations[;] could occasionally perform fine detail work such as small jewelry repair[; and] could perform simple, routine, and repetitive tasks, but not at a production rate pace." (R. 19 – 22).

Based on this RFC and the testimony of a vocational expert,[10] the ALJ

---

work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

determined that Hill was unable to perform any past relevant work. (R. 22). At Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Hill could perform given his RFC, age, education, and work experience. (R. 22 – 23). Thus, the ALJ found that Hill was not disabled under the Social Security Act. (R. 24).

## IV.    *Analysis*

Hill asserts two claims of reversible error, which the undersigned addresses in turn.

## A.

In limiting Hill to a reduced range of light work, the RFC included no specific restrictions on standing, walking, lifting, or carrying. Thus, at Step Four, the ALJ necessarily found that Hill could engage in "frequent lifting or carrying of objects weighing up to 10 pounds[,] and in "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday[,]" "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday…" Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6. [11] Hill asserts that the ALJ erred in failing to assign additional standing and walking limitations. The undersigned disagrees.

---

[11] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). "Even though the rulings are not binding on [federal courts], [courts] nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished) (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Apr. 27, 1981)).

It is true that Hill's treating physician, Dr. Ethan Gore, noted at a December 4, 2014 examination that Hill's stroke had cause unspecified "difficulty walking." (R. 331). However, Dr. Gore also noted in that examination that Hill "has improved since then[,]" and noted "no changes" at a follow-up examination on February 3, 2015. (R. 350).[12] Hill also points to a notation by consultative examiner Dr. Ilyas Shaikh indicating that Hill "has a limp with ambulation without circumduction." (R. 357). However, Dr. Shaikh also noted that Hill "is able to stand on his heels and toes" and that "[h]is tandem gait is normal[,]" and Hill acknowledges that Dr. Shaikh opined no specific limitations on Hill's ability to stand and walk.[13]

The foregoing evidence is not fundamentally inconsistent with an ability to meet the standing and walking requirements of light work. At most, it indicates some difficulty with walking, but not any particular difficulties with standing. The full range of light work requires only "standing **or** walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6

---

[12] Hill highlights the fact that Dr. Gore noted Hill had "wide gait" at the December 4, 2014 examination, but omits Dr. Gore's full notation indicating "wide gait but totally independent" (R. 332), indicating that Hill's "wide gait" did not cause serious limitations.

[13] Another of Hill's treating physicians, Dr. Christopher Gamard, did opine that Hill could "lift up to 10 pounds occasionally," and that "[i]n an 8-hour workday, [Hill] could sit, stand, or walk for less than 2 hours." (R. 20). The ALJ "assign[ed] less weight to Dr. Gamard's opinion[,]" finding that "his treatment records do not support greater limitations" than those in the RFC. (R. 20). Hill acknowledges this in his brief but fails to meaningfully challenge the ALJ's stated reasons for assigning less than substantial weight to Dr. Gamard's opinion, and an ALJ may properly give less than substantial weight to a treating physician's opinion when the "opinion was not bolstered by the evidence" or was "inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.

(emphasis added).  Thus, being able engage in both standing <u>and</u> walking for approximately 6 hours in an 8-hour workday is not required for light work – standing alone can suffice.  *See* 20 C.F.R. §§ 404.1567(b),416.967(b) ("Light work…requires a good deal of walking **or** standing…" (emphasis added)).  Indeed, "[m]any unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk."  SSR 83-10, 1983 WL 31251, at *6.  Here, the ALJ's limiting Hill to "simple, routine, and repetitive tasks" suggests a limitation to mostly "unskilled" work, *cf. Winschel*, 631 F.3d at 1180 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."), and all of the jobs the ALJ found Hill could perform at Step Five were classified as "unskilled, light jobs." (R. 23).

Hill has failed to convince the undersigned that the ALJ erred in failing to include any additional standing and walking limitations in the RFC.  Accordingly, this claim of reversible error is **OVERRULED**.

## B.

At Step Three, the ALJ must determine whether the claimant's impairments meet or equal the severity of any of specified impairments in the Listing of Impairments.

The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a

person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.[14] *See* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (footnote omitted).

[T]he idea is that the listings "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 357 F.3d at 1238. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that

---

[14] "Most of the listed impairments are permanent or expected to result in death. For some listings, we state a specific period of time for which your impairment(s) will meet the listing. For all others, the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).

manifests only some of those criteria, no matter how severely, does not qualify."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

At Step Three, the ALJ stated:

> The claimant's physical impairments do not meet or equal any requirements of any section of the Listing of Impairments in Appendix 1, Subpart P. No State Agency reviewer, consultant examiner, or treating physician concluded or submitted subsequent evidence that indicates the claimant has impairments severe enough to meet or equal a listing. Specifically, the undersigned considered listing 11.04.

(R. 19).[15]  Hill asserts that, in light of her Step Two findings of "right hemiparesthesia" and "visual disturbance" as severe impairments, the ALJ reversibly erred by failing to expressly consider Listings 2.03B and 2.04B, which, respectively, describe impairments of "[c]ontraction of the visual field in the better eye, with … [a]n MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d)[;]" and "[l]oss of visual efficiency, or visual impairment, in the better eye: … A visual impairment value of 1.00 or greater after best correction (see 2.00A8d)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The Eleventh Circuit has held that "it is not required that the Secretary mechanically recite the evidence leading to her determination[,]" and therefore "[t]here may be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (citing *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984)).  In *Hutchison*, for instance, the

---

[15] Category 11 lists neurological disorder impairments, with Listing 11.04 describing "vascular insult to the brain." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Eleventh Circuit found such an implied finding where "[t]he ALJ was obviously familiar with the sequential evaluation process[, h]is statement of the relevant law recognized that an affirmative determination regarding the applicability of any Appendix 1 listing, the third step of the disability analysis, would require a determination that the appellant was disabled[, and] the record indicates that the ALJ reached the final two steps of the analysis when he determined that the appellant was unable to perform his past work and that he did have the residual capacity for at least light work." *Id.* The court "thus consider[ed] it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments." *Id.*

Recently, the Eleventh Circuit, relying on *Hutchison*'s reasoning, found that a Step Three determination with substantially similar wording to the one given by the ALJ in this case, except it "did not make specific findings as to any impairments in the Listings[,]" was sufficient to implicitly indicate that the ALJ had considered specific Listings that related to a claimant's severe impairments, reasoning as follows:

> Here, the ALJ identified as a severe impairment Bailey's cirrhosis of the liver with both ascites, which relates to Listing 5.05B, and with hepatic encephalopathy, which relates to Listing 5.05F. The ALJ also explicitly found that Bailey's impairments, individually and in combination, did not meet <u>any</u> listed impairment. The ALJ then proceeded to steps four and five of the sequential analysis. Thus, the ALJ's explicit finding that Bailey's impairments did not meet a listed impairment included implicit findings that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy did not meet Listing 5.05B or F. Under our precedent, the ALJ was not required to make more explicit findings as to Listing 5.05B and F.

*Bailey v. Soc. Sec. Admin.*, *Comm'r*, -- F. App'x --, No. 18-14840, 2019 WL 3383638, at *3 (11th Cir. July 26, 2019) (per curiam) (unpublished).[16] In a footnote, the *Bailey* panel further noted:

> While specific findings as to the Listings in Appendix 1 are not required, we have noted "that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued." *See Barron v. Sullivan*, 924 F.2d 227, 230 n.3 (11th Cir. 1991). Given the ALJ's step-two finding that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy was a severe impairment, more specific findings would have been helpful here.

*Id.* at *3 n.5.

While the ALJ in the present case did note that she had "[s]pecifically … considered listing 11.04[,]" the ALJ also stated, similar to the ALJ in *Bailey*, that Hill's "physical impairments do not meet or equal **any** requirements of **any** section of the Listing of Impairments in Appendix 1, Subpart P[,]" (R. 19 (emphasis added)), then proceeded to Steps Four and Five of the sequential analysis. Given the Eleventh Circuit has indicated that, though not required, it would be "helpful"

---

[16] The ALJ's Step Three determination in *Bailey* stated:

> I considered [Bailey's] impairments individually and in combination, and these impairments do not meet or equal any of the medical or mental listings. Further, no examining or treating source has reported that [Bailey] has an impairment that meets the criteria of a listed impairment, and no State agency medical or psychological consultant or other designee of the Commissioner has reported that [Bailey] has an impairment that medically equals the criteria of a listed impairment.

*Bailey*, 2019 WL 3383638, at *2.

for ALJs to specifically discuss Listings that were given special consideration at Step Three, the undersigned will not penalize the ALJ for pointing out that she had given special consideration to Listing 11.04, and will accept her Step Three statement that Hill's impairments "do not meet or equal any requirements of any section" of the Appendix 1 Listings as implicitly indicating she considered all of those Listings, including Listings 2.03B and 2.04B.

However, the ALJ's implicit decision that Hill did not satisfy Listing 2.03B is not supported by substantial evidence.[17] To meet Listing 2.03B, there must be evidence demonstrating "[c]ontraction of the visual field in the better eye, with … [a]n MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 2.03B. "To determine whether … visual field loss meets listing 2.03B, [the Commissioner] use[s] the mean deviation or defect (MD) from acceptable automated static threshold perimetry that measures the central 30 degrees of the visual field. MD is the average sensitivity deviation from normal values for all measured visual field locations. When using results from HFA tests, which report the MD as a negative number, [the Commissioner] use[s] the absolute value of the MD to determine whether … visual field loss meets listing 2.03B. [The Commissioner] cannot use tests that do not measure the central 30 degrees of the visual field, such as the HFA 24–2, to determine if [an] impairment

---

[17] The undersigned does not read the ALJ's Step Three finding as making a determination whether Hill's impairments met the Step Three duration requirement, *see* n.14, *supra*, and the Commissioner has not attempted to argue in her brief that Hill's impairments did not meet the duration requirement.

meets or medically equals 2.03B." *Id.* § 2.00A6d.

The ALJ asserted that "[n]o State Agency reviewer, consultant examiner, or treating physician concluded or submitted subsequent evidence that indicates the claimant has impairments severe enough to meet or equal a listing." (R. 19). However, as Hill correctly points out, medical evidence submitted by consultative examining physician Dr. Gregory Jackson from a February 2017 assessment of Hill's visual condition appears to satisfy Listing 2.03B. As part of this assessment, Dr. Jackson performed a "Central 30-2 Threshold Test" on both of Hill's eyes (R. 369 – 370), a test which appears to be acceptable for determining whether a claimant satisfies Listing 2.03B. *See supra*; SSR 07-01P, 2007 WL 2215467, at *2 (S.S.A. July 31, 2007) (stating that "[t]he Humphrey Field Analyzer central 30-2 threshold test (HFA 30-2)" can provide an acceptable "automated static threshold perimetry test"). That test measured an MD of -22.65 dB for Hill's right eye, and an MD of -22.76 dB for his left eye. Taking the "absolute value" of those measurements, Hill's better eye demonstrated "[a]n MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field…" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 2.03B. *See also* Social Security Ruling 07-01P (S.S.A. July 31, 2007) ("A visual disorder meets listing 2.03B … when the MD for the better eye, measured with an HFA 30-2, is -22 dB or worse.").

The Commissioner does not address Dr. Jackson's MD readings in his brief, despite Hill's extensive discussion of them in his, nor does he point to other

objective evidence in the record that might contradict them. Instead, the Commissioner points to statements by Dr. Jackson in his report that Hill had "useful binocular vision in all directs…with glasses" for both near and distance and had a "good" "prognosis of condition." (R. 366 – 367), asserting that such opinions are inconsistent with finding an inability to work.[18] First, those vague opinions do not appear wholly inconsistent with Hill still being able to meet Listing 2.03B. Second, the Commissioner has cited no authority indicating that medical opinions, and particularly those of one-time examiners such as Dr. Jackson, whose opinions "are not entitled to deference or special consideration[,]" *Everett v. Soc. Sec. Admin., Comm'r*, No. 18-13697, 2019 WL 2522201, at *2 (11th Cir. June 19, 2019) (per curiam) (unpublished) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)), can trump the presumption of disability that attaches when a claimant meets or equals a Listing. Third, the ALJ did not discuss Dr. Jackson's MD readings at all in her decision,[19] much less attempt to explain why those readings were unreliable, or to point to other evidence that contradicted them. Rather, the ALJ's Step Three determination broadly asserted that no medical

---

[18] The ALJ gave "great weight to Dr. Jackson's opinion." (R. 21).

[19] On the other hand, the ALJ did expressly discuss the visual acuity impairment values measured by Dr. Jackson (*see* R. 21) and another consultative examiner (*see* Doc. 20), which are relevant to determining whether a claimant meets Listing 2.04B. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 2.00A8d ("Under 2.04B, [the Commissioner] calculate[s] the visual impairment value by adding [the claimant's] visual acuity impairment value (see 2.00A8b) and [his] visual field impairment value (see 2.00A8c). For example, if [the claimant's] visual acuity impairment value is 0.48 and [his] visual field impairment value is 0.73, [his] visual impairment value is: 0.48 + 0.73 = 1.21.").

source had submitted any evidence indicating that Hill met or equaled a Listing. As discussed above, this assertion is flatly contradicted by the record in regards to Listing 2.03B. Because the ALJ's implicit Step Three determination that Hill did not meet Listing 2.03B is not supported by substantial evidence, reversible error has been shown.[20]

Hill requests that the Commissioner's decision "be reversed for payment of benefits[,]" and only requests a remand for further proceedings in the alternative. (Doc. 11 at 15). The United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (citation and quotations omitted). In the context of Social Security judicial review specifically, the Eleventh Circuit has recognized that generally remand to the Commissioner for further proceedings is warranted where "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). This Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Id.* However, Hill has failed to convince the undersigned that

---

[20] Because reversible error has already been shown as to the ALJ's Listing 2.03B finding, the undersigned declines to address Hill's additional argument that the ALJ reversibly erred in failing to find that he satisfied Listing 2.04B.

this standard is met here, as the undersigned is reversing because it is not clear from the record that Commissioner has already considered essential evidence (i.e., evidence indicating that Hill could meet Listing 2.03B). Moreover, in claiming that he satisfies Listings 2.03B and 2.04B, Hill relies on evidence from a single medical examination occurring February 2017, approximately two and a half years after his alleged disability onset date and only about five months before the ALJ's decision was issued. It is not "clear" to the undersigned that this evidence, without more, satisfies the duration requirement for a Step Three disability finding, *see* n.14, *supra*, or that it would justify a finding of disability for the entire relevant adjudicatory period. Hill has also failed to convince the undersigned that, on remand, the Commissioner will be unable to cite other substantial evidence to show that Hill does not meet either of those listings. As such, he has also failed to convince the undersigned that the cumulative effect of the evidence establishes disability without any doubt. "Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam).

Accordingly, the Court finds that the Commissioner's final decision denying Hill a period of disability, DIB, and SSI is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the

Commissioner's final decision denying Hill's December 12, 2014 applications for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Hill a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Hill be awarded Social Security benefits on the subject applications following this remand, the Court hereby grants Hill's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[21] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued for the subject applications, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and

---

[21] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 11th day of September 2019.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**